**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shay Pendleton, a surviving parent of Jered Pendleton, deceased, and Personal Representative of the Estate of Jered Pendleton,<br><br>        Plaintiff,<br><br>vs.<br><br>City of Goodyear, an Arizona Body Politic; Brad Hardin and Jane Doe Hardin, husband and wife; John and Jane Does 1-10,<br><br>        Defendants. | No. CV-09-2213-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendants City of Goodyear and Bradley Hardin's Motion to Dismiss. (Dkt. #6). After reviewing the pleadings and determining oral argument unnecessary, the Court issues the following Order.

**I.    LEGAL STANDARDS**

At the motion to dismiss stage, all well pled factual allegations contained in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. Rhodes v. Robinson, 408 F.3d 559, 563, n.1 (9th Cir. 2005). A complaint must state a claim for relief that is plausible and that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). The Ninth Circuit has stated that "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. Id.

Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Section 1356 (2004). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). Therefore, a district court does not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also U.S. v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

**II.    PROCEDURAL BACKGROUND**

Plaintiff initiated this case by filing a Complaint (Dkt. #1-3, pp. 2-6) in the Maricopa County Superior Court on August 26, 2009. The case was thereafter removed to this Court on October 22, 2009. (Dkt. #1). On November 23, 2009, Defendants moved the Court for dismissal. (Dkt. #6).

**III.   THE ALLEGATIONS OF THE COMPLAINT**

At this stage of the proceedings, all factual allegations contained in Plaintiff's Complaint are treated as true. Rhodes, 408 F.3d at 563, n.1. On April 5, 2008, Jered Pendleton, Plaintiff's son, celebrated his 18th birthday. (Dkt. #1-4, p. 7, ¶ 11). Jered celebrated his birthday by attending a house party, where alcohol was being served, in

Goodyear, Arizona. (Dkt. #1-4, p. 7, ¶ 13). The party went on into the early morning hours of April 6, until police responded to a disturbance call of shots being fired in the area of the party. (Dkt. #1-4, p. 7, ¶ 14). When police arrived at the home, several of the partygoers fled the area, including Jered. (Dkt. #1-4, p. 7, ¶ 16). Officer Hardin and Sergeant Castillo were among the officers who arrived on scene. (Dkt. #1-4, p. 7, ¶ 15). Officer Hardin left the incident first and Sergeant Castillo left shortly thereafter. (Dkt. #1-4, p. 7, ¶ 17).

As Officer Hardin was driving down a road near the party, he hit an object. (Dkt. #1-4, p. 7, ¶ 18). Officer Hardin was focused on the computer screen in his car when he hit the object and he did not stop to see what he hit. (Dkt. #1-4, p. 7, ¶ 18). He did, however, look into his rear view mirror and see a person in the road. (Dkt. #1-4, p. 7, ¶ 19). He turned his vehicle around, in pursuit, and struck the individual. (Dkt. #1-4, p. 7, ¶ 19). He then turned the car around and fled the scene. (Dkt. #1-4, p. 7, ¶ 19).

Minutes later, Sergeant Castillo, traveling along the same road, saw a person in the road and had to veer his vehicle to avoid striking the individual. (Dkt. #1-4, p. 8, ¶ 20). Sergeant Castillo stopped his car and exited, but did not render aid or check the condition of the person in the roadway. (Dkt. #1-4, p. 8, ¶ 20). Sergeant Castillo then used his cell phone to call 911, requested paramedics and reported what he had found. (Dkt. #1-4, p. 8, ¶ 20). Thereafter, he used his cell phone to call Officer Hardin. (Dkt. #1-4, p. 8, ¶ 23). He did not use his police vehicle's communication system. (Dkt. #1-4, p. 8, ¶ 23). Eventually, paramedics arrived on scene and pronounced the individual dead. At that point, the death investigation began. (Dkt. #1-4, p. 8, ¶ 24).

It was later determined that the person found in the roadway was Plaintiff's son, Jered. (Dkt. #1-4, p. 8, ¶ 22). Officer Rogers was assigned to oversee the investigation into Jered's death. (Dkt. #1-4, p. 8, ¶ 25). Terri Woodmansee was assigned to serve as the victim's advocate. (Dkt. #1-4, p. 8, ¶ 25). Ms. Woodmansee was responsible for locating the family and serving as their point of contact during the investigation. (Dkt. #1-4, p. 8, ¶ 25). After initially making contact with Plaintiff and her family, Ms. Woodmansee was instructed by Officer Rogers not to engage in further contact with Plaintiff and her family, and to route all

communications through him. (Dkt. #1-4, p. 8, ¶ 26). When Ms. Woodmansee inquired as to why, she was told that the situation was "complicated," and told to inform Plaintiff and her family only that police were investigating a possible "silver car" in connection with Jered's death. (Dkt. #1-4, pp. 8-9, ¶ 26).

Over the next few months, Ms. Woodmansee received information about the investigation. (Dkt. #1-4, p. 9, ¶ 27). Specifically, she learned that Officer Hardin took his patrol car home and washed it after the morning of April 6, that Goodyear Police were never really looking for a silver car, that detectives had never been called to the scene of Jered's death, and that Officer Hardin had a history of reckless driving. (Dkt. #1-4, p. 9, ¶ 27).

Goodyear Police never fully or properly investigated Officer Hardin's involvement. (Dkt. #1-4, p. 9, ¶ 28). Officer Hardin's patrol car was not inspected until several days after the incident. (Dkt. #1-4, p. 9, ¶ 28). Additionally, while the inspection did reveal evidence of blood and a shoe print, Officer Hardin was never investigated, nor mentioned as having any involvement in initial police reports. (Dkt. #1-4, p. 9, ¶ 28).

Goodyear Police and City officials hid from, concealed, and/or failed to disclose evidence of Officer Hardin's involvement. (Dkt. #1-4, p. 9, ¶ 29). The City failed to inform Plaintiff that Officer Hardin had reported hitting something in the road and that Sergeant Castillo and Officer Hardin exchanged phone calls on their cellular telephones immediately after Sergeant Castillo found Jered in the road, as well as other information linking the police department to Jered's death. (Dkt. #1-4, p. 9, ¶ 29). City officials also knew and/or should have known about Officer Hardin's history of reckless driving and hid from, concealed, and/or failed to disclose this information to Plaintiff. (Dkt. #1-4, p. 9, ¶ 30).

In August 2008, the City held a meeting with Plaintiff and her family to provide an update on the investigation into Jered's death. (Dkt. #1-4, p. 9, ¶ 31). During the meeting, the City revealed the results of the autopsy and indicated that they had no leads because no vehicles, other than police cars, were witnessed at the scene. (Dkt. #1-4, pp. 9-10, ¶ 31). At the meeting, Plaintiff's sister inquired as to whether there was any police involvement and

City officials told the family that they had entirely ruled out police involvement. (Dkt. #1-4, p. 10, ¶ 31).

Around the time of Plaintiff's meeting with City officials, Ms. Woodmansee was terminated from her position with the City. (Dkt. #1-4, p. 10, ¶ 34). Ms. Woodmansee filed a notice of claim against the City in March 2009. (Dkt. #1-4, p. 10, ¶ 35). She alleged that she was terminated in retaliation for whistle-blowing, with respect to Jered's death and information she knew about the Goodyear police cover-up. (Dkt. #1-4, p. 10, ¶ 35). Initially, Ms. Woodmansee attempted to find Plaintiff and her family to share what she knew about Jered's death. (Dkt. #1-4, p. 10, ¶ 35). However, when Ms. Woodmansee was unable to locate Plaintiff and her family, she shared her story with the media. (Dkt. #1-4, p. 10, ¶ 35).

On May 9, 2009, Plaintiff read an article in the SOUTHWEST VALLEY REPUBLIC, which recounted Ms. Woodmansee's story that she believed City police officers were involved in Jered's death and had been attempting to conceal their involvement. (Dkt. #1-4, p. 11, ¶ 36). Only then did Plaintiff discover the facts surrounding her son's death. (Dkt. #1-4, p. 11, ¶ 37). She filed her Notice of Claim against Defendants later that month. (Dkt. #1-4, p. 11, ¶ 37).

Plaintiff alleges that Defendants engaged in an attempt to destroy, alter, or conceal evidence of their involvement in Jered's death by allowing and/or ordering Officer Hardin to remove and wash his car after the incident and before it was inspected; failing to check and/or erasing information and data from the dash camera in Officer Hardin's patrol car; failing to decode or download the black box in Officer Hardin's patrol car; failing to check cell phone records for Sergeant Castillo, Officer Hardin, and other police officials notified of the incident; removing fingerprints, blood, and/or other evidence from Officer Hardin's car at the scene of the accident; and representing to Plaintiff that there was no police involvement in her son's death. (Dkt. #1-4, p. 10, ¶ 32).

**IV.    DISCUSSION**

    **A.    State Law Claims**

Defendants argue that all of Plaintiff's state law claims are time-barred because both the Notice of Claim and the Complaint were filed in an untimely manner. For the reasons set forth below, the Court finds neither of these arguments persuasive.

### 1. Notice of Claim

Defendants claim that Plaintiff's state law claims are barred because Plaintiff did not file her Notice of Claim in a timely manner. Arizona Revised Statutes ("A.R.S.") § 12-821.01(A) provides that "[p]ersons who have claims against a public entity or public employee shall file claims . . . within one hundred eighty days after the cause of action accrues." The statute mandates that "[a]ny claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon." Id. "Compliance with the notice provision of § 12-821.01(A) is a mandatory and essential prerequisite to such an action. Failure to comply with the statute is not cured by actual notice or substantial compliance. Rather, plaintiff's failure bars any claim against the entity or employee." Harris v. Cochise Health Sys., 160 P.3d 223, 230 (Ariz. Ct. App. 2007) (internal citations omitted). "[A] cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." Mayer Unified Sch. Dist. v. Winkleman, 201 P.3d 523, 527 (Ariz. 2009) (citation omitted); A.R.S. § 12-821.01(B). "When discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." Walk v. Ring, 44 P.3d 990, 996 (Ariz. 2002) (internal quotations omitted).

In their Motion to Dismiss, Defendants assert that Plaintiff's Notice of Claim should have been filed by October 6, 2008, apparently using the date of Plaintiff's son's death, April 6, 2008, as the date the cause of action began to accrue. Plaintiff responds by arguing that her cause of action accrued on May 9, 2009, when she discovered, through a newspaper article in the SOUTHWEST VALLEY REPUBLIC, that "[Goodyear] police officers had been involved in the death of [her son] and had been attempting to conceal any police involvement." (Dkt. #1-4, p. 11, ¶¶ 36-37). Plaintiff states that she immediately served the

- 6 -

Notice of Claim to Defendants on May 26, 2009, and as such, the notice of claim was timely. As previously indicated, for notice of claim purposes, a cause of action does not necessarily accrue when the damage occurs, but rather, the clock begins to run when a plaintiff "realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." Mayer Unified Sch. Dist., 201 P.3d at 527; see also Scotti v. City of Phoenix, 2010 U.S. Dist. LEXIS 24921, *8-11 (D. Ariz. March 16, 2010). Plaintiff here has alleged that the notice of claim began to accrue on May 9, 2009, while Defendants argue for the earlier accrual date of October 6, 2008. Whether Plaintiff should have "reasonably [] know[n] the cause, source, act, event, instrumentality or condition which caused or contributed to the damage," Mayer Unified Sch. Dist., 201 P.3d at 527, is a disputed issue of fact, which cannot be appropriately resolved by the Court through a motion to dismiss, where all well pled allegations are taken as true. Although Defendants notice of claim argument must at this point fail, Defendants are free to raise this issue again at the conclusion of discovery in the form of a motion for summary judgment or, if need be, to a jury at trial.

## 2. Statute of Limitations

Defendants allege that because Plaintiff did not file her Complaint within the statute of limitations, Plaintiff's state law claims are barred. Specifically, Defendants assert that Plaintiff's "cause of action accrued **no later** than August 18, 2008." (Dkt. #6, p. 7) (emphasis in original). Arizona Revised Statutes § 12-821 provides that "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." "[A] cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." Mayer Unified Sch. Dist., 201 P.3d at 527. "In Arizona, however, the statute of limitations defense is not favored." Logerquist v. Danforth, 932 P.2d 281, 287 (Ariz. Ct. App. 1996).

Plaintiff again contends that her cause of action began to accrue on May 9, 2009. Like the notice of claim issue, "a cause of action does not accrue for [statute of] limitations

purposes until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." CDT, Inc. v. Addison, Roberts, & Ludwig, C.P.A., P.C., 7 P.3d 979, 982 (Ariz. Ct. App. 2000) (quoting Doe v. Roe, 955 P.2d 951 (Ariz. Ct. App. 1998)). In addition, "[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." Dube v. Likins, 167 P.3d 93, 99 (Ariz. Ct. App. 2007). Accordingly, whether Plaintiff should have known with reasonable diligence the circumstances surrounding her son's death is a question of fact that cannot be resolved by the Court at this state of the litigation. Therefore, Defendants' statute of limitations argument must likewise be rejected at this juncture.

### 3. Tortious Conspiracy

Defendants assert that Plaintiff's tortious conspiracy claim fails to state a claim for which relief can be granted and must be dismissed because, according to a 1981 case, "Arizona does not recognize the tort of conspiracy." (Dkt. #10, p. 5; Dkt. #6, p. 7) (quoting Hansen v. Stoll, 636 P.2d 1236, 1242 (Ariz. Ct. App. 1981).

With respect to whether tortious conspiracy is a cognizable cause of action under Arizona state law, the Court must note that Arizona courts recognize conspiracy in civil suits: "To establish liability on the basis of conspiracy, a plaintiff must show by clear and convincing evidence that the defendant and at least one other person agreed to accomplish an unlawful purpose or a lawful purpose by unlawful means, and accomplish the underlying tort, which in turn caused damages." Dawson v. Withycombe, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007). "A mere agreement to do a wrong imposes no liability; an agreement plus a wrongful act may result in liability. In short, liability for *civil conspiracy* requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." Wells Fargo Bank v. Ariz. Laborers, Teamsters, & Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12, 36 (Ariz. 2002) (internal citations and quotations omitted) (emphasis added). "A conspiracy may be established by circumstantial evidence through the nature of the acts, the relationship of the parties, the interests of the conspirators, or other circumstances." Dawson, 163 P.3d at 1053.

Defendants' contention that Arizona does not recognize a tortious conspiracy cause of action must therefore be rejected.

With respect to whether Plaintiff has stated a valid claim for relief, accepting the allegations in Plaintiff's First Amended Complaint as true, the Court must find that Plaintiff has adequately alleged that two or more persons conspired to commit the torts against Plaintiff and her son. The Complaint specifically alleges that the "wrongful conduct of defendants . . . was undertaken pursuant to a meeting of the minds." (Dkt. #1-4, p. 19, ¶ 86). Additionally, Plaintiff alleges that Defendants "fail[ed] to fully investigate the involvement of [Officer] Hardin" and "actively conceal[ed], misrepresent[ed], and/or fail[ed] to disclose . . . information about Goodyear Police involvement." (Dkt. #1-4, pp. 14-15, ¶ 61). Accordingly, Plaintiff has sufficiently alleged the required elements of tortious conspiracy under Arizona law.

### 4. Aiding and Abetting

Defendants assert that Plaintiff's claim for aiding and abetting fails to state a claim for which relief can be granted and must be dismissed because Plaintiff has not identified an underlying tort. In their briefs, both parties cite <u>Wells Fargo Bank v. Ariz. Laborers, Teamsters, & Cement Masons Local No. 395 Pension Trust Fund</u>, 38 P.3d 12 (Ariz. 2002). <u>Wells Fargo</u> was addressed most recently by Arizona courts in <u>Federico v. Maric</u>, __ P.3d __, 2010 WL 334544 (Ariz. Ct. App. Jan. 28, 2010). In <u>Federico</u>, the court noted that

> Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person. [A]iding and abetting liability does not require the existence of, nor does it create, a pre-existing duty of care . . . . Rather, aiding and abetting liability is based on proof of a scienter . . . the defendants must know that the conduct they are aiding and abetting is a tort. Claims of aiding and abetting tortious conduct require proof of three elements:
>
> (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff;
>
> (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and
>
> (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach.

Federico, 2010 WL 334544 at *2 (internal citations omitted). "Because aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation . . . . Such knowledge may be inferred from the circumstances. However, an inference of knowledge will not be made lightly." Id. (internal citations omitted). Nonetheless, "[a] showing of actual and complete knowledge of the tort is not uniformly necessary to hold a secondary tortfeasor liable under an aiding and abetting theory." Wells Fargo, 38 P.3d at 26.

Accepting the factual allegations of the First Amended Complaint as true, the Court finds that the Plaintiff has properly alleged the three elements required for aiding and abetting under Arizona law. First, Plaintiff alleges that Officer Hardin, as the primary tortfeasor, "negligently operat[ed] the motor vehicle that struck and killed [Plaintiff's son], negligently fail[ed] to stop and render aid to [Plaintiff's son], and actively conceal[ed] evidence of his involvement" in the death of Plaintiff's son. (Dkt. #1-4, p. 12, ¶ 46). Second, Plaintiff alleges that the City had "knowledge of [Officer Hardin's] negligent and/or reckless driving history" (Dkt. #1-4, p. 12, ¶¶ 48, 56) and "knew, should have known, and/or had a general awareness of the tortious conduct" of Officer Hardin. (Dkt. #1-4, p. 15, ¶ 64). Finally, Plaintiff alleges that the City "substantially assisted, encouraged, and/or ratified [Officer Hardin's] tortious conduct . . . by . . . actively concealing, altering, hiding, destroying, and/or failing to disclose evidence of [Officer Hardin's] tortious conduct." (Dkt. #1-4, p. 15, ¶ 65). Specifically, Plaintiff alleges that City officials "did not inform [Plaintiff] that [Officer] Hardin had reported hitting something in the middle of the road," (Dkt. #1-4, p. 9, ¶ 29), "hid from, concealed, and/or failed to disclose . . . [Officer] Hardin's history of reckless driving incidents," (Dkt. #1-4, p. 9, ¶30), "allow[ed] and/or order[ed] [Officer] Hardin to remove and wash his car after the incident and before it was inspected," (Dkt. #1-4, p. 10, ¶ 32), "fail[ed] to check and/or eras[ed] information and data from the dash camera in [Officer] Hardin's patrol car," and "remov[ed] fingerprints, blood and/or other evidence from [Officer] Hardin's car and the scene of the accident." Id. Accepting these factual assertions as true, Plaintiff has stated a valid claim for relief for the tort of aiding and abetting.

### B. Plaintiff's 42 U.S. § 1983 Claims

Defendants argue that (1) Plaintiff failed to identify a violation of a Constitutional right; (2) Plaintiff's individual claim against Officer Hardin is improper; and (3) Plaintiff cannot maintain a § 1983 claim against the City.

#### 1. Identification of a Particular Constitutional Right

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." Carey v. Piphus, 435 U.S. 247, 253 (1978) (quoting Imbler v. Pachtman, 424 U.S. 409, 417 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S. 137, 140 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. Albright, 510 U.S. at 271. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Baker, 443 U.S. at 146.

Defendants assert that Plaintiff "has failed to identify a federal statute or constitutional right that has been violated" and that Plaintiff "never articulates the specific constitutional right upon which her § 1983 claim is premised." To the contrary, the Court notes that Plaintiff's Complaint specifically alleges violations of Plaintiff's, and her son's, rights "guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution" and provides adequate factual allegations to support her claims of constitutional violations.

To support their claim, Defendants cite Jackson v. Nelson, 405 F.2d 872 (9th Cir. 1968) as an example of a case where the court "affirmed dismissal of a civil rights action for failure to state a claim . . . when the complaint contained a series of broad conclusory statements unsupported by specific allegations of fact." (Dkt. #6, p. 9). Jackson is not

- 11 -

analogus. In Jackson, the plaintiff was a *pro se* prisoner who filed a complaint against the warden and other officials at a state prison. 405 F.3d at 872. The Court of Appeals noted that the prisoner's complaint "reveal[ed] a series of broad conclusory statements unsupported, for the most part, by specific allegations of fact" and that "the individual defendants [we]re nowhere referred to in the pleadings, other than in the title to the action." Id. at 873. Unlike Jackson, Plaintiff in this case *has* identified specific defendants throughout her Complaint and she *has* included specific allegations of fact. Because Plaintiff's Complaint adequately identifies alleged violations of the Fourth and Fourteenth Amendments, pursuant to Albright, 510 U.S. at 266, Plaintiff has stated a valid constitutional claim for relief.

### 2. Section 1983 Claim Against Officer Hardin

To state a claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72 (1976).

Defendants argue that, because "there can be no claim, under 42 U.S.C. § 1983, for negligent acts," Count Six of the First Amended Complaint must be dismissed. However, Plaintiff's claims against Officer Hardin under § 1983 are expressly alleged to be based on his deliberate, and/or intentional conduct. Indeed, the Complaint is replete with references to acts of deliberate indifference and intent to injure by Officer Hardin against Plaintiff. Examples of such deliberate indifference and intent to injure include allegations that Officer Hardin intentionally struck Plaintiff's son with his patrol car, ignored Plaintiff's son's needs after striking him with his patrol car, and actively concealed his involvement in the death of Plaintiff's son. Thus, dismissal of Count Six is not appropriate at this stage of the proceedings.

### 3. Section 1983 Claim Against the City of Goodyear

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978); Davis v. Mason County, 927 F.2d 1473, 1480 (9th Cir. 1991), cert. denied, 502

U.S. 899 (1991); Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. § 1983." Fed. of African American Contractors v. City of Oakland, 96 F.3d 1204, 1214 (9th Cir. 1996). Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the result of a policy or custom of that state actor." African American Contractors, 96 F.3d at 1215 (internal quotations omitted).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." Monell, 436 U.S. at 691 (emphasis in original). The local government unit "itself must cause the constitutional deprivation." Gilette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992), cert. denied, 510 U.S. 932. Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-480 (1986). To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). Monell, 436 U.S. at 691-694; Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir. 2002).

An actionable policy or custom is demonstrated by:

1. An "express policy that, when enforced, causes a constitutional deprivation," Baxter v. Vigo County School Corp., 26 F.3d 728, 735 (7th Cir. 1994);

2. A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion); or

3. Constitutional injury caused by a person with "final policymaking authority," Praprotnik, 485 U.S. at 123.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." Spiller v. City of Texas City, Police. Dept., 130 F.3d 162, 167 (5th Cir. 1997). "[E]xistence

- 13 -

of a policy, without more, is insufficient to trigger local government liability." Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992). However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur, 475 U.S. 469, 480 (1986).

"More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Pembaur, 475 U.S. at 481. Local government liability is based on "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." McMillan v. Monroe County, Ala., 520 U.S. 781, 785 (1997).

To impose Monell liability, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy." Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984).

Here, Plaintiff has identified a policy. Indeed, she specifically alleges:

> the City was callously indifferent in its training of, and adoption of proper customs, policies, and procedures for the [Goodyear Police Department], in such things as . . . adopting proper, appropriate, and lawful policies, procedures, practices, protocols, and customs for pursuit of suspects, provision of medical care, reporting of Goodyear Police involvement in injuries and/or deaths, and in conducting and disclosing the facts of investigations.

(Dkt. #1-4, pp. 17-18).

Plaintiff has also connected that policy to the City. The Complaint alleges that "[t]he City . . . is legally responsible for the management of the criminal investigation system within its jurisdiction, and the establishment and implementation of policies, procedures, and protocols that govern the investigation, processing, handling, and management of Goodyear Police investigations under its control." (Dkt. #1-4, p. 17).

Plaintiff has further alleged that the injury was incurred because of the execution of the above mentioned policies. Specifically, plaintiff alleges that "[t]he City's deliberate, reckless, callous, and/or intentional indifference . . . was pursuant to official customs,

policies, and practices and caused, substantially contributed to cause, and/or was the moving force behind Jered's death and/or the injuries to Plaintiff." (Dkt. #1-4, p. 18).

Defendants assert that Plaintiff cannot maintain a § 1983 claim against the city because "[i]t is well settled that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (Dkt. #6, p. 10). Defendants are correct. See Monell, 436 U.S. at 691. However, because Plaintiff is not attempting to hold the City liable under a respondeat superior theory, Defendants' argument, in that regard, is misplaced. Accordingly, Defendants' argument that the City of Goodyear cannot, as a matter of law, be held liable under Monell lacks merit.

### C. Punitive Damages

In their Motion to Dismiss (Dkt. #6), Defendants argue that Plaintiff "fail[s] to state a claim for which relief can be granted for punitive damages under state law." (pp. 11-12). Plaintiff responds that "[n]owhere in the Complaint does Plaintiff request punitive damages under state law," but rather, Plaintiff "is only seeking punitive damages . . . against Officer Hardin . . . pursuant to 28 U.S.C. § 1988."[1] (Dkt. #9, p. 17). Defendants do not address this issue in their Reply.

It is well established that a jury may award punitive damages under section 1983. Smith v. Wade, 461 U.S. 30, 56 (1983); Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) ("a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others") (internal quotations omitted). Thus, there is no legal argument that supports dismissal of Plaintiff's request for punitive damages against Officer Hardin.

### V. CONCLUSION

---

[1] Because 28 U.S.C. § **1988** does not exist, the Court assumes that Plaintiff meant to cite 28 U.S.C. § **1983** and the reference to § **1988** was a typographical error.

For the foregoing reasons, the factual allegations contained within Plaintiff's First Amended Complaint are sufficient and properly pled under legally cognizable theories and may advance beyond this preliminary stage of the litigation.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendants' Motion to Dismiss. (Dkt. #6).

DATED this 17th day of May, 2010.

_____
Mary H. Murguia
United States District Judge