Sally A. Odegard - 011646 (sodegard@hofklaw.com)
Jesse M. Showalter - 026628 (jshowalter@hofklaw.com)
HOLLOWAY ODEGARD FORREST & KELLY, P.C.
3101 North Central Avenue, Suite 1200
Phoenix, Arizona 85012 **(32.249)**
(602) 240-6670

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shay Pendleton, et al., | Case No: CV 09-2213-PHX-JWS |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| City of Goodyear, et al, | **(Oral Argument Requested)** |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 56, the City of Goodyear (the "City") and Officer Brad Hardin request summary judgment on all of Plaintiff's claims.

On April 6, 2008, Jered Pendleton ("Pendleton") was struck and killed by an unknown driver traveling westbound on West Yuma Road in Goodyear, Arizona. The undisputed evidence indicates that Officer Hardin did not strike, run over, or otherwise cause or contribute to Pendleton's death. Bolt mark injuries on Pendleton's body eliminate Officer Hardin's police cruiser as the cause of Pendleton's death. Plastic vehicle parts discovered at the scene came from a Nissan or Infiniti—not Officer Hardin's cruiser.

Two separate police investigations, the first by the City, and the second by the Maricopa County Sheriff's Office, have ruled out Officer Hardin. Multiple accident reconstructionists, including Plaintiff's own expert, have concluded that Pendleton was struck by a westbound driver. Officer Hardin, who was traveling eastbound, could not have struck Pendleton. All the evidence leads to the conclusion that Officer Hardin had nothing to do with Pendleton's tragic death.

1    The wild accusations against Officer Hardin stem from an innocent and non-
2  tortious mishap that occurred after Pendleton's death.  At approximately 4:32 a.m. on
3  April 6, 2008, after Pendleton was struck, Officer Hardin drove past the accident scene
4  and unwittingly drove over Pendleton's empty shoe.  Officer Hardin felt a small bump,
5  but thought nothing of it because the road was notoriously bumpy.  When he learned that
6  he had driven past Pendleton's body, Officer Hardin immediately reported the bump to
7  his supervisors.

8    Sgt. Deron Miller inspected Officer Hardin's cruiser on the morning of April 6,
9  2008, and found no damage or tissue that would indicate it had struck or run over
10 Pendleton.  Two days later, Goodyear investigators discovered a shoe print on Officer
11 Hardin's left rear tire.  Officer Hardin's cruiser was seized, impounded and fully inspected
12 by the Arizona Department of Public Safety.  Investigators found no evidence on Officer
13 Hardin's cruiser that Officer Hardin had struck Pendleton.

14   Officer Hardin cooperated fully with both the Goodyear and the MCSO
15 investigations.  Officer Hardin's potential involvement was fully investigated and ruled
16 out.

17   There is no evidence of a conspiracy or cover up.  Officer Hardin's own accident
18 report, which details his potential involvement, has been a matter of public record since
19 April 2008.  Goodyear investigators informed Plaintiff of Officer Hardin's possible
20 involvement as early as August 2008.

21   Plaintiff's allegations are directly contrary to the undisputed facts and evidence in
22 this case and summary judgment is appropriate on all of Plaintiff's claims.

23   Officer Hardin and the City request summary judgment on the state law claims in
24 Plaintiff's First Amended Complaint ("FAC") as follows:

25    A.    Count 1, wrongful death, because there is no evidence that Officer
26          Hardin, or the City, caused the death of Jered Pendleton;

27    B.    Counts 2 and 3, negligence and gross negligence, because there is no
          competent or admissible evidence that Officer Hardin, or any
28          employee of the City was negligent or caused any compensible
          injury to Pendleton or to Plaintiff;

2

C.     Counts 4 and 5, tortious conspiracy, because there is no competent or admissible evidence of a tort, let alone evidence of a conspiracy to commit a tort or that any person aided or abetted the commission of a tort.

Officer Hardin and the City request summary judgment on Plaintiff's 42 U.S.C. § 1983 claim as well:

A.     Count 6, deliberate indifference and intent to injure, because there is no evidence that Officer Hardin was deliberately indifferent or acted with intent to injure Jered Pendleton, and because Officer Hardin did not injure Pendleton;

B.     Count 7, municipal liability under *Monell*, because Plaintiff has failed to identify an unconstitutional policy that was the moving force behind any constitutional violation;

C.     Count 8, conspiracy to violate 42 U.S.C. § 1983, because there is no competent or admissible evidence of a conspiracy to commit a constitutional violation.

Additionally, Plaintiff's state law claims are subject to dismissal on procedural grounds because she failed to comply with Arizona's notice of claim statute or file her suit within the limitations period.

This motion is supported by the City's separately filed statement of facts and the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    THE UNDISPUTED FACTS.

#### A.    Sgt. Castillo Discovered Pendleton's Body.

At 4:33 a.m. on April 6, 2008, Sgt. Troy Castillo was driving eastbound on West Yuma Road when he discovered the body of Jered Pendleton.  [SOF ¶ 1]  Sgt. Castillo immediately radioed dispatch that he had discovered a body in the road and requested that other officers and paramedics report to the scene.  [SOF ¶ 2]  The road was ordered closed to prevent any contamination of the scene.  [SOF ¶ 3]

Sgt. Castillo approached the body and was able to observe, based on his injuries and lack of pulse, that Pendleton was dead.  [SOF ¶¶ 4-5]

**B.** **Officer Hardin Reported The Possibility That He Could Have Driven Over Pendleton's Body, But His Involvement Was Ruled Out After A Seasoned Traffic Investigator Inspected His Cruiser.**

Officer Hardin had been traveling eastbound on that same stretch of West Yuma Road approximately one minute ahead of Sgt. Castillo.  [SOF ¶ 6]  The road was dark because there were no streetlights.   While driving the stretch of road near where Pendleton's body was discovered, Officer Hardin felt a small bump at his left rear tire consistent with a pothole or a small object.  Because West Yuma Road was in relatively poor condition and known for its divots and potholes, Officer Hardin thought nothing of feeling the bump.  [SOF ¶¶ 7-8]

On hearing Sgt. Castillo's report over the radio, however, Officer Hardin became concerned.   [SOF ¶¶ 7, 9]   Officer Hardin stopped his cruiser at the intersection of Litchfield and Yuma—his location when he heard Sgt. Castillo's report—to block traffic. [SOF ¶ 10]  Officer Hardin contacted Sgt. Castillo to inform him that he had felt a bump and that his cruiser could potentially have driven over Pendleton's body.  [SOF ¶ 9]

Sgt. Castillo, in turn, notified Sgt. Deron Miller, the supervisor for the Goodyear Police Department's Traffic Unit of the situation, including Officer Hardin's concerns. [SOF ¶ 11]   Under Goodyear Police Policy, the Traffic Unit is responsible for investigating all deaths involving motor vehicles.  [SOF ¶ 65]  Sgt. Miller then proceeded to Officer Hardin's location to meet with him and inspect his cruiser.  [SOF ¶ 13]

At some point prior to Sgt. Miller's inspection, Officer Hardin notified a police dispatcher that he had felt a bump and expressed his concerns about the possibility that he had potentially driven over Pendleton's body.  [SOF ¶ 20]  That phone conversation was recorded, and it speaks for itself.[1]

Sgt. Miller, who has extensive training in accident investigation and reconstruction, examined Officer Hardin's car for any signs of blood, human tissue, or even minute damage consistent with hitting a pedestrian.  [SOF ¶¶ 12-15]  Sgt. Miller found nothing to

---

[1]     A motion for leave to file the audio recording of the phone call has been submitted to the court as document number 89.  The CD containing the audio file will be lodged as **Exhibit F** to the Statement of Facts**.**

indicate that Officer Hardin's car had struck, driven over, or otherwise hit Pendleton. [SOF ¶¶ 15, 17]

Sgt. Miller assured Officer Hardin that his cruiser could not have struck Pendleton. [SOF ¶ 18]  Sgt. Miller did not seize Officer Hardin's cruiser, because, based on his training, experience, and inspection of the cruiser, he had ruled it out.  [SOF ¶ 19]

Officer Hardin remained at the corner of Litchfield and Yuma controlling traffic and maintaining the crime scene log for the next four hours.  [SOF ¶ 21]  Officer Hardin was released from the scene and took his cruiser home, as he did every day at the end of his shift.  [SOF ¶ 22]  On April 9, 2008, Officer Hardin authored a supplemental report documenting the bump he had felt.  [SOF ¶ 23]

At every point, Officer Hardin was open about his concerns and his potential involvement.  [SOF ¶¶ 6-23]  He has never hidden anything.

Officer Hardin did not kill Jered Pendleton.  [SOF ¶ 49]

**C.     The Initial Investigation And The Seizure Of Officer Hardin's Car.**

At the scene, Sgt. Miller assigned Officers Jeff Rogers[2] and Richard Beck as lead investigators of Pendleton's death.  [SOF ¶ 24]  Over the next four hours, Officers Rogers and Beck, Sgt. Miller and other officers diagrammed the crime scene, catalogued evidence, and searched for vehicles in the area with any damage consistent with a car-pedestrian collision.  [SOF ¶ 25]

Officer Rogers discovered silver paint chips at the scene which suggested that the vehicle that had struck Pendleton was silver in color.  [SOF ¶ 26]  Officer Rogers also discovered plastic vehicle parts at the scene from the vehicle that most likely struck Pendleton.  [SOF ¶ 27]  Neither the paint chips, nor the plastic vehicle parts came from Officer Hardin's cruiser.  [SOF ¶ 28]

Because Sgt. Miller had ruled out Officer Hardin's potential involvement and was focused on the evidence at the scene, he did not consider it necessary to inform Officers

---

[2]     Officer Rogers has since been promoted to Lieutenant.   For purposes of consistency, he is referred to according to his rank as of April 6, 2008.

Rogers and Beck of Officer Hardin's concerns, or his own inspection of Officer Hardin's cruiser which had ruled Officer Hardin out.  [SOF ¶ 29]  Sgt. Miller did, however, notify command staff that he had inspected Officer Hardin's cruiser and ruled Officer Hardin out. [SOF ¶ 30]

Two days after the collision, Officers Rogers and Beck attended Pendleton's autopsy at the Office of the Maricopa County Medical Examiner.  [SOF ¶ 31]  At the autopsy, Officers Rogers and Beck learned that Pendleton had no injuries to his legs or feet.  This suggested that Pendleton had not been standing at the time of the accident that caused his death, as they had initially believed.  Instead, he had most likely been sitting, lying down, or falling at the time he was struck and killed.  [SOF ¶ 32]

Upon returning to Goodyear, Officers Beck and. Rogers shared the autopsy results with Commander Ralph McLaughlin.  [SOF ¶ 33]  Commander McLaughlin asked them if they thought it was possible that Officer Hardin could have driven over Pendleton.  [SOF ¶ 34]  Up to this point, Officers Rogers and Beck were unaware of the bump that Officer Hardin had reported to Sgts. Castillo and Miller, or that Sgt. Miller had inspected and cleared Officer Hardin's cruiser.  [SOF ¶ 35]

After consulting with other officers, Officer Rogers decided to impound and examine Officer Hardin's cruiser to determine if Officer Hardin was somehow involved in Pendleton's death.  [SOF ¶ 36]

Officer Rogers contacted Officer Hardin to determine the location of his cruiser and to ask him about his potential involvement.  Officer Hardin informed Officer Rogers that his cruiser was at his residence.  [SOF ¶ 38]  Officer Rogers was careful not to alert Officer Hardin to the fact that officers were already on their way to Officer Hardin's house to inspect and impound the cruiser.  [SOF ¶ 39]  When Officer Rogers asked Officer Hardin about the bump that he had reported, Officer Hardin indicated that he had felt a bump, had reported it up the chain of command, and that Sgt. Miller had examined his cruiser and cleared it at the scene.  [SOF ¶ 37]

6

When officers arrived at Officer Hardin's residence, they immediately inspected his cruiser "for any missing parts, damage, or biological matter.  [SOF ¶¶ 40-41]  They found none.  [*Id.*]  The officers did, however, find a shoe print on the sidewall of the cruiser's driver-side rear tire.  [SOF ¶ 41]  After taking numerous photos of the shoe print, the officers loaded the cruiser onto a flatbed truck and delivered it to the DPS crime laboratory.  Officers Rogers and Beck requested that DPS inspect the cruiser for any evidence that it had been involved in a collision.  [SOF ¶¶ 42-43]

**D.** **The Arizona Department Of Public Safety Crime Laboratory Examined Officer Hardin's Cruiser And Found No Evidence That Officer Hardin Struck Pendleton.**

After receiving Officer Hardin's cruiser into evidence, the sole potential evidence that DPS was able to locate were two tiny droplets of what appeared to be blood.  [SOF ¶ 44]  DPS performed a DNA analysis on these droplets and conclusively determined they were not human in origin.  [SOF ¶ 45]

DPS found no indication that the cruiser had been washed and no indication that Officer Hardin's cruiser had struck Pendleton.

**E.** **Officer Rogers Completed His Investigation And Determined That Pendleton Was Struck By A Westbound Vehicle, Excluding Officer Hardin, Who Was Driving Eastbound.**

In the course of his investigation, Officer Rogers determined that Brad Hardin did not hit, run over, or otherwise cause the death of Jered Pendleton.  [SOF ¶ 46]  According to Officer Rogers' reconstruction, Pendleton was struck by a westbound vehicle.  [SOF ¶ 47]  This ruled Officer Hardin out, as Officer Hardin was traveling eastbound when he felt the bump, and there was no evidence on Officer Hardin's cruiser to suggest that he hit Pendleton.  [SOF ¶ 48]

Officer Hardin did not hit or kill Jered Pendleton.  [SOF ¶ 49]

**F.** **Officer Rogers Met With Plaintiff And Her Family And Informed Them That Officer Hardin Had Been Investigated And Ruled Out.**

On August 18, 2008, Officer Rogers and Chief of Police Mark Brown met with the Pendleton family to explain the progress of the investigation.  [SOF ¶ 50]  According to

7

Plaintiff, the possibility that a police officer had been involved in Pendleton's death was discussed at this meeting.  As of August 18, 2008, Plaintiff had notice that a Goodyear officer had been investigated in relation to Pendleton's death.  [SOF ¶ 51]

### G.   Tim Leggett's Reconstruction Confirmed That Officer Hardin Did Not Cause Pendleton's Death And Plaintiff's Own Expert Agreed With Mr. Leggett's Conclusions.

Accident reconstructionist Tim Leggett performed a reconstruction of the accident that reached the same conclusions as Officer Rogers.  Mr. Leggett determined that Pendleton was struck by a westbound driver and that there was no evidence to suggest that Officer Hardin's cruiser had struck Pendleton.  Mr. Leggett determined conclusively that the bump that Officer Hardin felt was made when he ran over Pendleton's empty shoe, after Pendleton had already been struck and killed.  [SOF ¶¶ 52-54]

Edward Maciag, plaintiff's accident reconstructionist, testified that he agreed with Mr. Leggett's and Officer Rogers' conclusion that Pendleton was struck by a westbound driver.  [SOF ¶ 55-57]  Mr. Maciag acknowledged that the evidence is that Officer Hardin was travelling eastbound, and admitted that he was not aware of any evidence that Officer Hardin was ever traveling westbound.  [SOF ¶ 57-58]

Mr. Maciag also testified that, not only was there no evidence that Officer Hardin's car had been washed, as Plaintiff claims in her complaint, but that, in his expert opinion, Officer Hardin's car had not been washed "period."  [SOF ¶ 59]

### H.   Terri Woodmansee And John Rowan's Baseless Allegations Of Murder, Conspiracy And Cover-Up.

The City anticipates that Plaintiff will attempt to survive summary judgment by relying on the foundationless and speculative allegations of Terri Woodmansee and John Rowan.  Terri Woodmansee is a former City of Goodyear employee who claims to have discovered anomalies in the City of Goodyear's investigation of Pendleton's death.  [SOF ¶ 60]  Based on these alleged anomalies and other suspicions, Ms. Woodmansee claims to believe that Officer Hardin killed Pendleton and that the City of Goodyear engaged in a

cover up and conspiracy.[3]   [SOF ¶ 61]   Ms. Woodmansee has testified that because "everything" supports her belief in a conspiracy, she has a hard time giving a simple explanation to support her various allegations and beliefs.  [SOF ¶ 62]  Ms. Woodmansee has admitted that she has no training in police investigation or accident reconstruction, and her allegations are generally based on her own lack of foundational knowledge.  [SOF ¶¶ 63-65]

John Rowan, who has been in a romantic relationship with Ms. Woodmansee since 2007, is a current City of Goodyear employee who has testified in Ms. Woodmansee's case as well as this one in support of Ms. Woodmansee's allegations.  [SOF ¶¶ 66-67]  Mr. Rowan has testified that he has no training in accident reconstruction, that he is not qualified to investigate a fatal collision, and that he never examined the scene of Pendleton's death or Officer Hardin's cruiser.  [SOF ¶ 68]  Mr. Rowan also testified that he has no basis to criticize an accident reconstructionist's report or methods.  [SOF ¶ 69]

### I.   The Maricopa County Sheriff's Department Performed An Independent Reconstruction And Investigation That Ruled Out Officer Hardin As A Suspect And Identified A Possible Suspect Vehicle.

In April of 2011, at the request of the City of Goodyear, the Maricopa County Sheriff's Office reopened the investigation of Pendleton's death.  [SOF ¶ 70]  Detective Forrest Wright, who conducted the investigation, completed his report on September 18, 2011.  [SOF ¶ 71]  Detective Wright's conclusions are consistent with the conclusions previously reached by Officer Rogers and Mr. Leggett, namely that Pendleton was struck by a westbound vehicle and that Officer Hardin did not cause Pendleton's death.  [SOF ¶¶ 72-73]

Detective Wright also identified previously unexamined evidence that rules out Officer Hardin's cruiser as the vehicle that struck and killed Pendleton.  Upon reviewing the photographs taken by the City's investigator and the County medical examiner, Detective Wright determined that the vehicle that struck Pendleton left patterned injuries

---

[3]   Ms. Woodmansee has an employment action against the City that is currently pending in this district court as *Woodmansee v. City of Goodyear, et al.*, No. 09-CV-01994 (HWG).

on Pendleton's body, in the form of two bolt marks.  [SOF ¶ 74]  Detective Wright had these patterned injuries scaled and their size compared to the bolts on the undercarriage of Officer Hardin's cruiser, as well as to bolts on the undercarriages of two other vehicles that were potentially involved in the collision, a Chevrolet truck that was observed near the scene and a GMC tow truck.  [SOF ¶ 75]  Using this analysis, Detective Wright was able to exclude Officer Hardin's car as the vehicle that struck Pendleton:

> The **Chevrolet Impala** [Officer Hardin's vehicle] and GMC 7500 are **excluded as potential sources of the injury pattern located on the victim's left shoulder**.  One bolt head from [Officer Hardin's vehicle] was compared and excluded as having produced the injury pattern due to dissimilar size.

[SOF ¶ 76]  Detective Wright was not able to exclude a bolt on the undercarriage of the Chevrolet truck as the cause of the patterned injury to Pendleton's left shoulder.

Detective Wright determined that plastic vehicle parts at the scene suggested that the most likely suspect vehicle was "a 1994 to 2008 Nissan Maxima or 300ZX or a 2002 to 2008 Nissan Altima, Quest, or Infiniti QX 35/45."  [SOF ¶ 77]

## II.   LEGAL ANALYSIS OF PLAINTIFF'S CLAIMS:   OFFICER HARDIN IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS.

To survive summary judgment, Plaintiff must demonstrate "significant probative evidence" to support the allegations in her complaint.  *Schowengerdt v. U.S.*, 944 F.2d 483 (9th Cir. 1991) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986), *et al.*).  Since the outset of this litigation, Plaintiff has maintained that,

> On information and belief . . . Hardin had observed a person on or near the road in his review mirror and turned his patrol car in pursuit, ignoring the risk of harm to the person in the middle of the night, struck that person and then turned the car around again after striking the person and fled the scene.

FAC ¶ 19.  In response to the City's motion to dismiss, Plaintiff alleged that discovery would support the allegations in her complaint.  *See* Plaintiff's Response To The City's Motion to Dismiss (Dkt. 9), pp. 11-12.  But discovery has not revealed any evidence to support Plaintiff's account, let alone the "significant probative evidence" required to avoid summary judgment.  *Schowengerdt, supra.*  To the contrary, discovery has revealed that

10

1   Plaintiff's claims are based entirely on speculation, conclusory allegations and

2   unreasonable inferences that are contrary to the actual evidence.  [SOF ¶¶ 78-80]  *See*

3   **Exhibit U**, Plaintiff's Responses to Interrogatories.

4            As the undisputed facts make clear, no reasonable jury could believe that Officer

5   Hardin caused or contributed to Pendleton's death or that there was a conspiracy or cover

6   up surrounding Pendleton's death.  Plaintiff's "speculative and conclusory arguments do

7   not constitute the significantly probative evidence required to create a genuine issue of

8   material fact."  *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982); *see also Nelson v.*

9   *Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (holding that "mere allegation

10  and speculation do not create a factual dispute for purposes of summary judgment").

11       **A.    Officer Hardin Is Entitled To Summary Judgment On Plaintiff's State**
            **Law Claims For Wrongful Death, Negligence, Gross Negligence And**
12          **Conspiracy (Counts 1-4).**

13           Plaintiff's state law claims against Officer Hardin for wrongful death, negligence,

14  gross negligence, and conspiracy fail because there is no evidence that would allow a

15  reasonable jury to conclude that Officer Hardin caused Pendleton's death.

16           Regardless of the theory of liability, Plaintiff must show that Officer Hardin was

17  both the "but for" and "proximate" cause of Pendleton's injury.  *See* § A.R.S. 12-611;

18  *Buckeye Irr. Co. v. Askren,* 45 Ariz. 566, 577-78, 46 P.2d 1068, 1072 (1935) (holding that

19  wrongful death plaintiff must prove but for and proximate causation); *Orme School v.*

20  *Reeves*, 166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990) (holding that summary judgment

21  appropriate in negligence claim where Plaintiff failed to present evidence of causation).

22  *Dawson v. Withycombe*, 216 Ariz. 84, 103, 163 P.3d 1034, 1054 (App. 2007) (requiring

23  proof of causation in an action for civil conspiracy:  "plaintiff must show by clear and

24  convincing evidence that the defendant and at least one other person agreed to accomplish

25  an unlawful purpose or a lawful purpose by unlawful means, and accomplish the

26  underlying tort, which in turn caused damages.")

27           Plaintiff has no eyewitness or qualified expert who will support her claim that

28  Officer Hardin struck Pendleton.  In addition to the utter absence of evidence to support

11

1   Plaintiff's speculative theories, the actual evidence directly contradicts Plaintiff's claims:

2   Officer Hardin's cruiser did not strike Jered Pendleton and it did not cause his death.

3   **B.    Officer Hardin Is Entitled To Summary Judgment On Plaintiff's § 1983 Claims (Counts 6 and 8).**

4

5   As with her state law claims, causation is an essential element of Plaintiff's § 1983

6   claims, which require Plaintiff to "establish both causation-in-fact and proximate

7   causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).  As noted

8   above, there is simply no evidence that would allow a reasonable jury to conclude that

9   Officer Hardin was the actual or proximate cause of Pendleton's death, that he acted with

10  deliberate indifference to Pendleton's rights, or that he violated Plaintiff's constitutional

11  rights to familial association.

12  Even if Plaintiff could show causation, her claims would still fail because Plaintiff

13  cannot meet her burden of showing fault beyond mere negligence.  *See Daniels v.*

14  *Williams*, 474 U.S. 327, 333 (1986) ("injuries inflicted by governmental negligence are not

15  addressed by the United States Constitution").  In response to the City's motion to dismiss

16  (Dkt. 6), Plaintiff acknowledged this requirement, and alleged that her "claims against

17  Officer Hardin under § 1983 are . . . based on his reckless, deliberate, and/or intentional

18  conduct, not mere negligence."  Plaintiff's Response To Motion To Dismiss (Dkt. 9), p. 11

19  (citing FAC ¶¶ 69-72).

20  But discovery has not revealed any evidence to support Plaintiff's allegations.  All

21  the evidence leads to the unavoidable conclusion that Officer Hardin did not cause or

22  contribute to Pendleton's death.  There is no evidence that Officer Hardin acted recklessly

23  or intentionally, or that he was deliberately indifferent to anyone's rights.  The evidence

24  simply does not permit Plaintiff's allegations that Officer Hardin negligently caused

25  Pendleton's death, let alone support the higher finding of fault required for her § 1983

26  claims to survive.

27  **III.    THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS.**

28

12

1    Because there is no evidence that Officer Hardin caused Pendleton's death, the City

2    cannot be held liable on any state law theory of *respondeat superior*.  Nor, for that matter,

3    can Plaintiff establish liability under any theory that the City, itself, somehow caused

4    Pendleton's death, committed a tort, or violated Pendleton's or Plaintiff's constitutional

5    rights.

6    **A.    The City Is Entitled To Summary Judgment On Plaintiff's Negligence And Gross Negligence Claims Relating To Pendleton's Death (Counts 2 and 3).**

7

8    Plaintiff's negligence and gross negligence claims against the City for Pendleton's

9    death fail for the same reasons as her claims against Officer Hardin.  Whether stated as

10   claims for vicarious liability or for negligent/grossly negligent hiring and supervision,

11   Plaintiff's claims are unsupported by the evidence.  There is no causal link between the

12   City's actions and Pendleton's death.

13   **B.    Plaintiff's Claims For Negligent Or Grossly Negligent Investigation Fail (Counts 2 And 3) Because Arizona Does Not Permit Police Departments To Be Held Liable Whenever A Crime Goes Unsolved.**

14

15   Plaintiff's negligence and gross negligence claims alleging that the City can be held

16   liable for its investigation of Pendleton's death (*see* FAC ¶¶ 44, 48, 51, 56) amount to an

17   attempt to hold the City liable because it has been unable to determine who killed

18   Pendleton.  This claim fails because Arizona law does not permit family members of a

19   decedent to bring such a claim.  *See Vasquez v. State*, 220 Ariz. 304, 313, 206 P.3d 753,

20   762 (App. 2008); *Morton v. Maricopa County*, 177 Ariz. 147, 150, 865 P.2d 808, 811

21   (App. 1993) ("request for . . . police aid, or the undertaking by the police to make a report

22   and assure appropriate action will be taken does not create a 'special relationship' from

23   which 'duty' is born.").[4]

24   In *Vazquez*, the plaintiffs sued Cochise County, alleging wrongful death in a police

25   pursuit, as well as claims for negligent failure to timely identify the deceased over a period

26

27   _____
     [4]    Arizona courts have recognized the tort of "grossly negligent investigation" only in
     the case of individuals who have been wrongfully arrested.  *See Cullison v. City of Peoria*,

28   120 Ariz. 165, 584 P.2d 1156 (1978); *Landeros v. City of Tucson*, 171 Ariz. 474, 831 P.2d
     850 (App. 1992).

of several months.   The *Vasquez* court dismissed the negligent investigation claim, explaining that "a special relationship between an investigating law enforcement agency and a decedent's family member does not arise merely by the agency undertaking to investigate an accident or resulting death." *Vasquez*, 220 Ariz. at 313.   The *Vasquez* court explained that recognizing a tort duty in such cases would result in an inappropriate and unwarranted expansion of liability:

> Everything law enforcement undertakes conceivably might have some impact on a particular family or individual.   If the dissent's broad view of "duty by undertaking" were the law "[e]very unsolved crime could then theoretically give rise to a cause of action by the victim or a deceased victim's relatives for negligent investigation."

*Id*. (quoting *Morton, supra.*)

Even if Arizona did recognize this cause of action, Plaintiff's claim for negligent or grossly negligent investigation would still fail because there is no evidence that would allow a reasonable jury to conclude that the City's investigation reached an incorrect conclusion.   The City's investigators concluded that Officer Hardin did not strike or kill Jered Pendleton.   The Maricopa County Sheriff's Office performed an independent investigation and reached the exact same conclusion.

### C.   The City Is Entitled To Summary Judgment On Plaintiff's State Law Conspiracy And Aiding And Abetting Claims (Counts 4 And 5).

To prevail on her civil conspiracy claim, "[P]laintiff must show by **clear and convincing evidence** that the defendant and at least one other person agreed to accomplish an unlawful purpose or a lawful purpose by unlawful means, and accomplish the underlying tort, which in turn caused damages." *Dawson v. Withycombe*, 216 Ariz. 84, 103, 163 P.3d 1034, 1054 (App. 2007) (emphasis added).[5]

Here, Plaintiff cannot show either an agreement to accomplish a tort or the existence of any underlying tort.   Nor, for that matter, can she show either element by the required standard of clear and convincing evidence.   Plaintiff's unsupported allegations of

---

[5]   Plaintiff's state law conspiracy claim is also barred under the intracorporate conspiracy doctrine. *Dawson*, 216 Ariz. at 1055, n.19.

1    conspiracy relate to conduct she claims occurred *after* Pendleton's death.   The alleged

2    conspiracy cannot, then, have caused Pendleton's death.   Accordingly, Plaintiff's state law

3    conspiracy claim must be dismissed.

4         Plaintiff's aiding and abetting claim against the City requires showing (a) the

5    commission of a tort that injured the plaintiff; (b) that the defendant knew that the

6    underlying tort constituted a breach of duty; and (c) that the defendant "substantially

7    assist[ed] or enourage[d]" the underlying breach of duty."  *Wells Fargo*, 201 Ariz. at 485,

8    38 P.3d at 23 (citing Restatement (Second) of Torts § 876(b)).

9         Once again, Plaintiff cannot meet the required elements of this tort because the

10   most essential element—the existence of an underlying tort—is absent.   Without offering

11   probative evidence of the underlying tort, Plaintiff cannot show that the City knew of the

12   tort or that it assisted or encouraged the underlying tort.   Accordingly, Plaintiff's aiding

13   and abetting claim must be dismissed.

14        **D.    The City Is Entitled To Summary Judgment On Plaintiff's § 1983**

15        **_Monell_ Claims (Counts 7 and 8).**

16        Plaintiff has brought two § 1983 claims against the City.   First, she alleges that

17   "deliberate, reckless, callous, and/or intentional indifference . . . pursuant to official

18   customs policies, and practices," somehow resulted in Pendleton's death.  (FAC, Count 7,

19   ¶¶ 83-4.)  Second, she alleges that "All Defendants" entered into a conspiracy "to act in

20   concert to violate Plaintiffs' constitutional rights."   (FAC, Count 8, ¶¶ 86-7.)   These

21   claims, like all Plaintiff's claims, fail because there is no evidence that the City's policies,

22   practices or customs caused Pendleton's death or violated Plaintiff's constitutional rights.

23        To maintain an action against a municipality under § 1983, a plaintiff must

24   demonstrate that a municipal policy, practice, or custom violated her constitutional rights.

25   *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978).   Municipal liability under

26   § 1983 cannot be based on a theory of *respondeat superior. Id.*   Instead, Plaintiff must

27   show both (a) culpability (a constitutionally defective policy, practice or custom

28   attributable to municipal policymakers) and (b) causation (that the policy practice or

15

1  custom was the "moving force" behind the constitutional deprivation.)  *Id.* at 690.

2  Here, Plaintiff can show neither.  Plaintiff has failed to identify any such official

3  custom, policy or practice, and has equally failed to explain how any City action was the

4  moving force behind Pendleton's death, or any conspiracy to violate Plaintiff's civil rights.

5  Moreover, Plaintiff cannot use a conspiracy allegation to plead around the

6  requirements of *Monell*.  In order to establish liability against the City, Plaintiff must show

7  that some official policy, practice or custom was the moving force behind her alleged

8  conspiracy.  To prove her § 1983 conspiracy claim against the City, Plaintiff must show

9  "an agreement or meeting of minds to violate [her] constitutional rights" and "an actual

10  deprivation of [her or Pendleton's] constitutional rights."  *Woodrum v. Woodward County,*

11  *Okla.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

12  Plaintiff cannot make either of these showings.  There is no evidence that any City

13  personnel entered into an agreement or meeting of the minds to deprive Plaintiff or

14  Pendleton of their constitutional rights.

15  Plaintiff's § 1983 conspiracy claim is also subject to dismissal under the

16  intracorporate conspiracy doctrine.  *U.S. v. Summit Healthcare Ass'n, Inc.*, 2011 WL

17  814898 *6-7 (D. Ariz. 2011).  By definition, an entity, including a municipality, cannot

18  "conspire" with itself or its agents.  *Id.*

19  **IV.   PLAINTIFF'S FAILURES TO FILE A TIMELY NOTICE OF CLAIM OR**
20  **TO FILE SUIT WITHIN THE APPLICABLE STATUTE OF LIMITATIONS**
   **REQUIRE DISMISSAL OF HER STATE LAW CLAIMS.**

21

22  Plaintiff's cause of action accrued no later than August 18, 2008, and Plaintiff failed

23  to file a timely notice of claim or to file her lawsuit within the statutory limitations period.

24  Under Arizona law, "a cause of action accrues when the damaged party realizes he or she

25  has been damaged and knows or reasonably should know the cause, source, act, event,

26  instrumentality or condition which caused or contributed to the damage."  A.R.S. § 12-

27  821.01(B); *see also Canyon del Rio Investors, L.L.C. v. City of Flagstaff*, --- P.3d ---, 2011

28  WL 2162558, ¶16 ("A cause of action accrues under A.R.S. § 12–821 when a plaintiff

1    discovers or reasonably should have discovered that an injury was caused by the
2    government's action.").

3        Plaintiff testified that on August 18, 2008, Officer Jeff Rogers of the City of
4    Goodyear told Plaintiff and her family that one of its officers had been investigated as a
5    potential cause of her son's death.  [SOF ¶¶ 50-51.]  At that point, she knew the essential
6    facts that she now alleges form a basis for her claims.  *See* A.R.S. § 12-821.01(B).  Her
7    cause of action accrued at that meeting.

8        Plaintiff had to file her notice of claim with the City within 180 days of that date.  §
9    12-821.01(A) ("Any claim which is not filed within one hundred eighty days after the
10   cause of action accrues is barred and no action may be maintained thereon.").  The statute
11   required Plaintiff to file her notice of claim no later than February 18, 2009.  Plaintiff did
12   not file her notice of claim until May 27, 2009, three months too late.  *See* Motion to
13   Dismiss, (Dkt. 9).  Under the statute, Plaintiff's state law claims are "barred and no action
14   may be maintained thereon."  A.R.S. § 12-821.01(A).

15       Plaintiff's state law claims are also barred under Arizona's statute of limitations:
16   "[a]ll actions against any public entity or public employee shall be brought within one year
17   after the cause of action accrues and not afterward."  A.R.S. § 12-821.  Plaintiff's claims
18   accrued on August 18, 2008, but she did not file her complaint until August 26, 2009.
19   Plaintiff's complaint was untimely, and her state law claims are subject to dismissal.

20   **IV.   CONCLUSION.**

21       The evidence leads to just one reasonable conclusion:  Officer Hardin did not cause
22   or contribute to Pendleton's death.   Two separate investigations have reached that
23   conclusion.    There is no evidence to support Plaintiff's allegations.   "Conclusory,
24   speculative testimony in affidavits and moving papers is insufficient to raise genuine
25   issues of fact and defeat summary judgment."  *Soremekun v. Thrifty Payless, Inc.*, 509
26   F.3d 978, 984 (9th Cir. 2007).

27       Summary judgment on behalf of Officer Hardin and the City is appropriate on all of
28   Plaintiff's claims.

1       DATED this 28th day of October, 2011.

2                        HOLLOWAY ODEGARD FORREST & KELLY, P.C.

3

4                By     s/ Sally A. Odegard

5                      Sally A. Odegard
                      Jesse M. Showalter

6                       3101 North Central Avenue, Suite 1200
                      Phoenix, Arizona  85012

7                       Attorneys for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on the 28th day of October, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Brian R. Warnock, Esq.
John T. White, Esq.
WARNOCK, MACKINLAY & CARMAN, PLLC
7135 E. Camelback Rd., Suite F240
Scottsdale, Arizona  85251
Attorneys for Plaintiff

<u>s/ Ann E. Blacketer</u>