UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| SHAY PENDLETON, | |
| Plaintiff, | 2:09-cv-02213 JWS |
| vs. | ORDER AND OPINION |
| CITY OF GOODYEAR, *et al.*, | [Re: Motion at Docket 90] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 90, defendants City of Goodyear ("the City") and Brad Hardin ("Hardin"; collectively "defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Shay Pendleton ("plaintiff") opposes the motion at docket 97. Defendants' reply is at docket 103. Oral argument was requested but would not assist the court.

## II. BACKGROUND

This lawsuit arises out of the death of Jered Pendleton ("Pendleton"). Plaintiff is Pendleton's mother. Pendleton was struck and killed by a vehicle in the early morning hours of April 6, 2008. His body was discovered by Sergeant Troy Castillo ("Castillo") of

the Goodyear Police Department at 4:33 a.m. Castillo was traveling eastbound on West Yuma Road. Pendleton's body was in the middle of the road. Hardin was also a Goodyear police officer. He had been traveling eastbound on West Yuma Road approximately one minute before Castillo.

Castillo radioed dispatch for emergency assistance, and after hearing the call, Hardin used his cell phone to call Castillo. As Castillo remembers the phone call, Hardin told him "Hey Sarge, I was driving down that road and . . . I think I may have hit that kid."[1] Hardin continued, "I was driving down the road and I felt like a pa-pump. I looked in my rearview mirror and didn't see anything."[2] Hardin told Castillo that he was looking at his dashboard computer screen at the time.

Hardin parked his vehicle at the intersection of Litchfield and Yuma to block traffic. Castillo called Sergeant Deron Miller ("Miller"), the head of the accident investigation team, and explained what Hardin had reported. Miller testified that he immediately met with Hardin upon arriving at the scene.[3] Miller stated that he was informed that Hardin "felt a thump-thump" while driving through the scene and accordingly, he inspected Hardin's vehicle.[4] Miller described Hardin as "visibly shaken."[5] Miller determined that it did not look like Hardin's vehicle had hit anything, although he also stated that he did not look at the tires.[6] Miller did not document his meeting with Hardin or his inspection of Hardin's vehicle.

Miller proceeded to the scene of the accident and assigned Officers Jeff Rogers ("Rogers") and Richard Beck ("Beck") as lead investigators. Miller did not inform

---

[1] Doc. 99-4 at 79.

[2] *Id.*

[3] Doc. 99-9 at 346.

[4] *Id.*

[5] *Id.* at 347.

[6] *Id.* at 348.

Rogers or Beck of Hardin's potential involvement. Rogers and Beck attended Pendleton's autopsy and learned that Pendleton had no injuries to his lower body, which indicated that Pendleton had not been standing when he was struck. Rogers and Beck met with Commander Ralph McLaughlin ("McLaughlin"). McLaughlin asked them something along the lines of "Do you think Hardin did it?"[7] Rogers was "shocked" by McLaughlin's comment.[8]

Rogers ultimately decided to impound Hardin's vehicle. Rogers contacted Hardin, who told him that he thought he might have struck something, and that he had reported it to Castillo and Miller. Rogers did not tell Hardin that they would be impounding his vehicle. Hardin received a phone call from Detective Anna Ybarra, who told him that investigators were going to inspect his vehicle. Investigators found a shoe print on the driver-side rear tire of Hardin's vehicle and blood specks that were later determined to be of non-human origin.

Rogers ultimately determined that Pendleton was struck by a westbound vehicle. Rogers therefore ruled out Hardin as the cause of Pendleton's death. Defendants' expert, Tim Leggett ("Leggett"), also concluded that Pendleton was struck by a westbound vehicle. Leggett has opined that the bump that Hardin felt was Pendleton's empty shoe. Plaintiff's expert, Edward Maciag, also concluded that Pendleton was struck by a westbound driver.

Plaintiff filed suit in Arizona state court in August of 2009. The case was removed to federal court in October 2009. Plaintiff has asserted claims against Hardin and the City for wrongful death, negligence, conspiracy, aiding and abetting, and violations of 42 U.S.C. § 1983. Plaintiff maintains that Hardin struck and killed Pendleton and that the City, through officers of the Goodyear Police Department, engaged in a "cover-up" to protect Hardin.

---

[7]Doc. 99-9 at 48.

[8]*Id.*

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[10] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[12] The reviewing court may not weigh evidence or assess the credibility of witnesses.[13] The burden of persuasion is on the moving party.[14]

## IV. DISCUSSION

**A. Defendants' "Undisputed" Facts**

Defendants' motion begins with a statement of "undisputed" facts, many of which are not only disputed, but inaccurate. For instance, defendants state that "Hardin contacted . . . Castillo to inform him that he felt a bump and that his cruiser could potentially have driven over Pendleton's body."[15] According to Castillo, Hardin initially told him "I think I may have hit that kid . . . I was driving down the road and I felt like a pa-pump."[16] Hardin stated at his deposition that he "reported to [his superiors] that

---

[9] Fed. R. Civ. P. 56(a).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[11] *Id.*

[12] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[13] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15] Doc. 90 at 4.

[16] Doc. 99-4 at 79.

there was a possibility [he] had hit Mr. Pendleton."[17]  Similarly, whereas defendants state that "Hardin notified a police dispatcher that he had felt a bump and expressed his concerns about the possibility that he had potentially driven over Pendleton's body,"[18] Hardin actually told the dispatcher that investigators "might have to check my tires too" for signs that he had struck Pendleton.[19]

As plaintiff points out in her response, a large portion of the "undisputed" facts are based on internal investigations and a 2011 investigation conducted by the Maricopa County Sheriff's Office ("MCSO").  Plaintiff disputes the findings made in those investigations, and their conclusions are not binding.  Plaintiff also indicates that she intends to challenge the admissibility of the bolt analysis in the MCSO report.  Many bases of defendants' "undisputed" facts are therefore in dispute.

**B. Claims Against Hardin**

    **1. Plaintiff's State Law Claims**

Defendants argue that "there is no evidence that would allow a reasonable jury to conclude that . . . Hardin caused Pendleton's death."[20]  Plaintiff responds that Hardin was "the only [person] who was in the vicinity at the time of Jered's death; he admitted hitting something with his car at that time; his car had physical evidence connecting him to the scene; and he reported . . . that he believed he had struck . . . the 'kid,' even though the initial call on the radio had only noted a dead body in the road."[21]

---

[17] Doc. 99-10 at 40.

[18] Doc. 90 at 4.

[19] Doc. 93.

[20] Doc. 90 at 11.

[21] Doc. 97 at 13.

The autopsy indicated that the cause of death was "some sort of . . . compression to the head."[22] As plaintiff argues, Hardin was driving in the vicinity at the time of Pendleton's death, and he struck something–which he, at least initially, thought to be a "kid." From that evidence, a reasonable jury could potentially conclude that Hardin struck Pendleton and caused his death.

Defendants argue that they have presented evidence conclusively excluding Hardin's vehicle. Defendants cite a report by Rogers, composed on April 9, 2008–the day that Rogers discovered that Hardin had told Miller and the dispatcher that he had struck something. The report says nothing of Hardin's potential involvement. Defendants also cite Rogers' reconstruction report. Therein, Rogers states that he "can not conclude that the acceleration marks [which suggest Pendleton was struck by a westbound vehicle] are associated with this case."[23] Rogers indicates in both the initial report and the reconstruction that blood and tissue marks also suggest that Pendleton was struck by a westbound driver. However, as plaintiff points out, even if the court were to accept that Pendleton was struck by a westbound driver, that fact would not rule out the possibility that Hardin turned his vehicle around at some point while on the road. Finally, plaintiff maintains that the "Searle" formulas on which a good portion of Rogers' reconstruction are based are not properly applied under the circumstances of the accident. Defendants also point to their expert's reconstruction. Leggett's conclusion that the bump that Hardin felt was Pendleton's empty shoe can be evaluated by a jury.

Defendants argue that Hardin's vehicle was impounded and that investigators found no evidence that Hardin had struck Pendleton. However, Hardin's vehicle was not impounded until two days after the collision. Moreover, the shoe print found on Hardin's tire matched one of the shoes that Pendleton was wearing at the time of his death.

---

[22]See doc. 99-9 at 48.

[23]Doc. 91-1 at 80.

Defendants also argue that the MCSO's independent investigation conclusively establishes that Hardin's vehicle did not cause Pendleton's death. Plaintiff indicates that she intends to challenge the admissibility of the "bolt analysis" undertaken in that report. Assuming its admissibility, the MCSO's report is not binding on the court and can be evaluated by a jury.

In sum, viewed in the light most favorable to plaintiff, defendant's evidence does not exclude Hardin's vehicle as the potential cause of Pendleton's death. There are disputed issues of material fact that preclude summary judgment on plaintiff's state law claims.

### 2. Plaintiff's § 1983 Claims

Defendants maintain that summary judgment in their favor on plaintiff's § 1983 claims is appropriate because plaintiff is unable to demonstrate causation or recklessness. Defendants' causation argument fails for the reasons set out above. Despite defendants' contention that no evidence suggests that Hardin acted with recklessness, given the position of Pendleton's body in the middle of the road, a reasonable jury could potentially conclude that Hardin was reckless.

## D. Claims Against the City

### 1. State Law Negligence Claims

Defendants advance two theories in support of their argument that summary judgment is appropriate on plaintiff's negligence claims against the City. First, defendants maintain that there is no causal link between the City and Pendleton's death. Second, defendants maintain that Arizona does not permit the family members of a decedent to bring such claims.

To the extent the City is vicariously liable for Hardin's actions under Arizona law, defendants' first argument fails. Defendants second argument is based on the proposition that plaintiff's negligence claims against the city "amount to an attempt to

hold the City liable because it has been unable to determine who killed Pendleton."[24] The court disagrees with the defendants' characterization. The discussion in the case that defendants' cite in support of their position involved "claims for wrongful handling of a dead body and infliction of emotional distress based on alleged negligence in inspecting or investigating [a crime] scene and related facts of the accident and the person of [the decedent]."[25] Plaintiff has not asserted analogous claims. Similarly, in that case, "the core of [the plaintiff's] complaint [was] the failure to identify [the decedent]–something the state and county had no duty to do."[26] Here, the core of plaintiff's complaint is not a failure to identify the person that struck Pendleton; rather, it is the allegation that Hardin struck and killed Pendleton.

**2. State Law Conspiracy and Aiding and Abetting Claims**

In Arizona, civil conspiracy "requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit."[27] Defendants argue that plaintiff is unable to show either an agreement or an underlying tort. Plaintiff responds that "[c]ontrary to the arguments advanced in [d]efendants' [m]otion, Arizona law also recognizes claims for conspiracy and aiding and abetting, based on these facts."[28] Plaintiff then cites a single case. The case cited involved civil conspiracy to commit fraud.[29] Plaintiff has not identified what tort defendants conspired to commit. As defendants point out, the conspiracy allegations

---

[24]Doc. 90 at 13.

[25]*Vasquez v. State*, 206 P.3d 753, 760 (Ariz. Ct. App. 2009).

[26]*Id.* at 762.

[27]*Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons*, 38 P.3d 12, 36 (Ariz. 2002).

[28]Doc. 97 at 17.

[29]*Wells Fargo Bank*, 38 P.3d at 37.

-8-

relate to conduct that occurred after Pendleton's death.  Consequently, Pendleton's alleged wrongful death cannot form the basis for plaintiff's conspiracy claim.

Because plaintiff has not identified an underlying tort that defendants conspired to commit, summary judgment in defendants' favor on plaintiff's state law conspiracy claim is appropriate.

**3. § 1983 Claims**

Defendants maintain that plaintiff has not identified a city policy, custom, or practice that caused plaintiff any injury and, therefore, summary judgment is appropriate on plaintiff's § 1983 claim against the City.  The court agrees.  Plaintiff maintains that "[a]s previously pled before the [c]ourt" in response to defendants' motion to dismiss, "[p]laintiff has sufficient evidence" that the City is directly liable under *Monell*.[30] However, in plaintiff's response to defendants' motion to dismiss, she stated that "[i]f the evidence obtained in discovery shows that . . . Hardin and other police officers were acting pursuant to and in accordance with City policies when Jered was pursued, struck, ignored, and then the police involvement covered-up, the City will be directly liable under § 1983 for constitutional violations."[31]  Plaintiff fails to identify any such policy in its response to defendants' motion for summary judgment.  In fact, plaintiff's statement that "[d]efendants' policymakers and command staff *adopted* a strategy to conceal or suppress the truth about Hardin's involvement,"[32] contradicts the notion that those policymakers and command staff acted in accordance with an official policy or custom.

Plaintiff argues in the alternative that the City is indirectly liable under § 1983. Plaintiff cites *Gibson v. County of Washoe*.[33]  There, the Ninth Circuit described "a second route to municipal liability" under § 1983, through which "a plaintiff can allege

---

[30]Doc. 97 at 17; *Monell v. New York City Dept. of Soc. Svcs.,* 436 U.S. 658 (1978)*.*

[31]Doc. 9 at 14.

[32]Doc. 97 at 17 (emphasis added).

[33]290 F.3d 1175 (9th Cir. 2002).

1  that through its *omissions* the municipality is responsible for a constitutional violation
2  committed by one of its employees."[34]  In such a case, the "plaintiff must show that the
3  municipality's deliberate indifference led to its omission and that the omission caused
4  the employee to commit the constitutional violation."[35]

5  Plaintiff has not identified what evidence supports deliberate indifference on the
6  part of the City.  Nor has plaintiff identified the omission on which her theory is based or
7  the constitutional violation in question.  Plaintiff mentions her constitutional right to
8  access to the justice system, but offers no citation and does not elaborate.

9  Finally, plaintiff infers that the City is also liable for a failure to adequately train its
10 employees, but does not identify what evidence, if any, supports her theory, or what
11 constitutional injury stemmed from the alleged failure to train.

**D.  Procedural Arguments**

**1. Notice of Claim**

Arizona Revised Statute § 12-821.01(A) states that "[p]ersons who have claims against a public entity or public employee shall file claims . . . within one hundred eighty days after the cause of action accrues."[36]  Defendants argue that plaintiff's claim accrued on August 18, 2008, when she learned from Rogers that Hardin had been investigated as a potential cause of Pendleton's death.  Because plaintiff's notice of claim was not filed within 180 days of that date, defendants argue that her claim is barred.  "[A] cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality which caused or contributed to the damage."[37]  The statute sets out an objective standard, and the court concludes that a reasonable person would not meet

---

[34] *Id.* at 1186.

[35] *Id.*

[36] A.R.S. § 12-821.01(A).

[37] *Id.* § 12-821.01(B).

-10-

the statutory criteria based on Rogers' statement to plaintiff "that one of its officers had been investigated as a potential cause of her son's death."[38] Moreover, much of plaintiff's complaint is based on information that came to light after August 18, 2008, when Rogers provided that information to plaintiff.

**2. Statute of Limitations**

Defendants also argue that plaintiff's state law claims are barred under Arizona's statute of limitations. Because defendants' argument is also erroneously premised on plaintiff's cause of action having accrued on August 18, 2008, defendants' argument fails.

### V. CONCLUSION

For the reasons above, defendants' motion at docket 90 for summary judgment pursuant to Rule 56 is **GRANTED** in part and **DENIED** in part as follows.

1) It is granted with respect to plaintiff's conspiracy claims and § 1983 claims against the City. Those claims are **DISMISSED**.

2) It is denied with respect to all other claims.

DATED this 20th day of February 2012.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[38]Doc. 90 at 17.